TJOFLAT, Circuit Judge,
dissenting:
It is axiomatic, as a matter of history as well as doctrine, that the existence of appellate jurisdiction in a specific federal court over a given type of case is dependent upon authority expressly conferred by statute. And since the jurisdictional statutes prevailing at any given time are so much a product of the whole history of both growth and limitation of federal- *1368 court jurisdiction since the First Judiciary Act, they have always been interpreted in the light of that history and of the axiom that clear statutory mandate must exist to found jurisdiction.
Carroll v. United States, 354 U.S. 394, 399, 77 S.Ct. 1332, 1336, 1 L.Ed.2d 1442 (1957) (citations omitted) (emphasis added). Despite this guidance from the Supreme Court and our court’s precedent to the contrary, a majority of this court today holds that a party aggrieved by certain interlocutory orders can bypass the traditional requirements governing discretionary interlocutory appellate review, see 28 U.S.C. § 1292(b), and instead automatically receive appellate review by manufacturing a final judgment through inviting the district court to enter a voluntary dismissal with prejudice. Because the majority’s decision is at odds with both fundamental appellate jurisdiction tenets and our prior precedent, I respectfully dissent. Part I explains and applies to this case the background principles animating appellate jurisdiction and our judiciary’s long-standing policy disfavoring piecemeal appellate review. Part II discusses the direct precedent that I believe controls the disposition of this case — precedent that the majority skirts around and ignores. Part III briefly concludes with guidance for future litigants on the proper way to proceed when faced with a case dispositive discovery motion.
I.
We start any jurisdictional analysis by being mindful of two fundamental principles that limit our court’s authority. First, a court of appeals can only entertain an appeal from a district court order if Congress has, by statute, conferred the court with jurisdiction. See, e.g., Kirkland v. Midland Mortgage Co., 243 F.3d 1277, 1280 (11th Cir.2001) (“Article III of the Constitution provides the outer limits of the federal courts’ jurisdiction and vests in Congress the power to determine what the extent of the lower courts’ jurisdiction will be.”). Second, even where Congress has conferred jurisdiction, the Constitution requires that there must exist a real case or controversy. U.S. Const, art. III, § 2. See also Aetna Life Ins. Co. of Hartford, Conn. v. Haworth, 300 U.S. 227, 240-41, 57 S.Ct. 461, 464, 81 L.Ed. 617 (1937) (“A ‘controversy’ in this sense must be one that is appropriate for judicial determination. A justiciable controversy is thus distinguished from a difference or dispute of a hypothetical or abstract character; from one that is academic or moot. The controversy must be definite and concrete, touching the legal relations of parties having adverse legal interests. It must be a real and substantial controversy admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts.”) (citations omitted). I address in turn both of these principles and how they apply in this context.
A.
As a general rule, Congress has statutorily conferred broad jurisdiction to the courts of appeals to hear final decisions from district courts. 28 U.S.C. § 1291.[1] A final decision “ends the litigation on the *1369 merits and leaves nothing for the court to do but execute the judgment.” Catlin v. United States, 324 U.S. 229, 233, 65 S.Ct. 631, 633, 89 L.Ed. 911 (1945). Although the so-called “final judgment rule” serves many purposes, the central objectives are to promote the policies of judicial efficiency, avoid piecemeal litigation, and preserve the independence of district courts. See Constr. Aggregates, Ltd. v. Forest Commodities Corp., 147 F.3d 1334, 1336 (11th Cir.1998). “If a party seeks to appeal a district court order that does not constitute a ‘final decision’ under § 1291 (and does not fall within an exception to the final judgment rule), we must dismiss the case for lack of appellate jurisdiction.” SEC v. Carrillo, 325 F.3d 1268, 1272 (11th Cir.2003).
In certain instances, though, Congress has granted the courts of appeals jurisdiction to hear interlocutory, non-final orders. For example, Congress has conferred jurisdiction over interlocutory appeals with respect to injunctions,[2] receiverships,[3] and admiralty decrees determining the rights and liabilities of the parties.[4] Moreover, in addition to these general grants of interlocutory appellate authority, Congress has at times provided for specialized interlocutory appellate jurisdiction. See, e.g., 18 U.S.C. § 3626(f)(3)(providmg for “the right to an interlocutory appeal of the judge’s selection of the special master” under the Prison Litigation Reform Act provisions). Thus, when Congress has chosen to allow parties to seek immediate interlocutory appellate review, it has done so explicitly.
As we have often stated, discovery motions are generally not final orders for purposes of obtaining appellate jurisdiction. Carpenter v. Mohawk Indus., Inc., 541 F.3d 1048, 1052 (11th Cir.2008). Therefore, discovery orders are normally not immediately appealable. Id.; Rouse Constr. Int’l, Inc. v. Rouse Constr. Corp., 680 F.2d 743, 745 (11th Cir.1982). Congress has not statutorily authorized interlocutory appellate review for discovery motions, and for sound policy reasons — the preservation of district court integrity and the promotion of judicial efficiency dictates that parties should not be able to circumvent lower courts by seeking piecemeal appellate review. Instead, through the Interlocutory Appeals Act of 1958, Congress created a bi-level procedure for establishing appellate jurisdiction to review non-final orders in civil actions. See 28 U.S.C. § 1292(b).[5] Under section 1292(b), appel *1370 late courts may, at their discretion, review non-final orders if a trial judge certifies that the “order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation.” Id. Absent both certification from a trial judge and acceptance of the appeal by the Court of Appeals, parties are not permitted to have immediate review of discovery orders.
*1369 When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing *1370 in such order. The Court of Appeals which would have jurisdiction of an appeal of such action may thereupon, in its discretion, permit an appeal to be taken from such order, if application is made to it within ten days after the entry of the order: Provided, however, That application for an appeal hereunder shall not stay proceedings in the district court unless the district judge or the Court of Appeals or a judge thereof shall so order.
As axiomatic as these jurisdictional principles might seem, in the present case, OFS Fitel LLC and OFS BrightWave LLC (collectively “Fitel”) have engineered a scheme of jurisdictional gymnastics to circumvent the section 1292(b) trial court certification/appellate court acceptance requirement. Here, when presented with an adverse discovery order, Fitel did not seek section 1292(b) certification from the district court. Instead, Fitel sought immediate automatic appellate review by asking the district court to dismiss the entire case with prejudice.[6] While in form, Fitel has presented a final order for appeal (albeit a final order without the requisite adverseness, an issue that I address next), the substance of the appeal reveals that this is an appeal from an interlocutory discovery order. As we have previously stated, when an appeal from a final order is merely masquerading as an appeal from an interlocutory order, we lack jurisdiction to hear the case. See Druhan v. American Mutual Life, 166 F.3d 1324, 1326 (11th Cir.1999) (“In substance, this is not an appeal from a final judgment, but an appeal from an interlocutory order .... The problem with [this] approach is that it is not statutorily authorized.”).
Since Congress has not statutorily authorized this approach, I believe that Fitel should not be allowed to circumvent the prescribed boundaries of our court’s jurisdiction and receive an automatic appeal by requesting that the district court enter an order that is “final” only in form, but not in substance.
B.
However, even if I were to concede that Fitel is appealing a final order, this Court still does not have jurisdiction to hear this appeal because the final order in question here lacks the Constitutional requisite of adverseness. It is this point that I next *1371 address. As a formal matter, it is clear that we have no jurisdiction to review the judgment in this case, because there is no case or controversy. The jurisdiction of the federal courts, under Article III of the U.S. Constitution, is limited to “Cases” and “Controversies.” U.S. Const, art. III, § 2. At the heart of the case or controversy requirement is the presence of adverse parties. See GTE Sylvania, Inc. v. Consumers Union of the United States, Inc., 445 U.S. 375, 382-83, 100 S.Ct. 1194, 1199-1200, 63 L.Ed.2d 467 (1980).
As the Supreme Court has previously noted, the purpose of the Constitutional case-or-controversy requirement is to “limit the business of federal courts to questions presented in an adversary context and in a form historically viewed as capable of resolution through the judicial process.” Flast v. Cohen, 392 U.S. 83, 95, 88 S.Ct. 1942, 1950, 20 L.Ed.2d 947 (1968). Moreover, the clash of adverse parties “sharpens the presentation of issues upon which the court so largely depends for illumination of difficult ... questions.” Baker v. Carr, 369 U.S. 186, 204, 82 S.Ct. 691, 703, 7 L.Ed.2d 663 (1962). Accordingly, there is no Article III case or controversy when the parties desire “precisely the same result.” Moore v. Charlotte-Mecklenburg Board of Education, 402 U.S. 47, 48, 91 S.Ct. 1292, 1293, 28 L.Ed.2d 590 (1971) (per curiam).
This Constitutional mandate imposes serious restrictions on our court’s ability to hear cases. We are not free to disregard the Constitutional adverseness requirement merely because we desire to reach the merits of a claim. This case is no exception. Here, it is without dispute that neither Fitel nor Epstein, Becker & Green, P.C. (“EBG”) objected to the district court’s order dismissing the case with prejudice. Indeed, there was no reason for EBG to object, and Fitel invited the dismissal with prejudice. See supra note 6. Because there was no adverseness by either party, we have no case or controversy. Accordingly, we are Constitutionally barred from hearing the case before us.
The majority tries to circumvent the Constitutional requirement of adverseness by noting that Fitel is adverse to the merits of the decision — that is, Fitel did not desire the case dismissal, but only accepted the dismissal with prejudice because the district court had entered a case-dis-positive order. Indeed, under the majority’s reading, Fitel merely “suggested” that for “efficiency reasons” the court should place its judgment “in the final form of a case termination.” Even if that is the case — which the record does not suggest one way or the other — then Fitel should have raised at least some objection and at least sought section 1292(b) certification of an interlocutory order. Fitel’s failure to raise any type of objection to the dismissal with prejudice necessitates a finding that we cannot hear this case for lack of a real “case or controversy.” See Moore, 402 U.S. at 48, 91 S.Ct. at 1293, 91 S.Ct. 1292 (stating that when “both litigants desire precisely the same result,” there is “no case or controversy within the meaning of Art. III of the Constitution”); see also Reynolds v. Roberts, 202 F.3d 1303, 1312 (11th Cir.2000) (“a party normally has no standing to appeal a judgment to which he or she consented”).
Accordingly, I believe that this court is incapable of hearing Fitel’s appeal for both the lack of statutory jurisdiction and the lack of the requisite Constitutional adverseness. The majority ignores these axiomatic principles in an effort to reach the merits — a decision that I believe both flouts limits on our authority and sends the wrong message to litigants and the district judges of our circuit.
*1372 II.
Apart from the Constitutional and Congressional limitations on our jurisdiction, this court has direct precedent that necessitates that we do not reach the merits of Fitel’s appeal. The majority, in a desire to reach the merits of Fitel’s claims, limits the reach of our prior decisions. Because I believe that these holdings are directly on point, I turn my attention now to that precedent.
A.
The holdings of Druhan v. American Mutual Life, 166 F.3d 1324 (11th Cir.1999), and Woodard v. STP Corp., 170 F.3d 1043 (11th Cir.1999), are directly on point and therefore should control our decision. In both cases, the plaintiff, after suffering an adverse interlocutory ruling, moved the district court to dismiss the action with prejudice, and then, after the court granted the motion, appealed the dismissal[7] for the purpose of obtaining appellate review of the interlocutory ruling.[8] Druhan, 166 F.3d at 1325; Woodard, 170 F.3d at 1044. In both cases, we held that we lacked jurisdiction to review the interlocutory ruling. Druhan, 166 F.3d at 1326; Woodard, 170 F.3d at 1044. Druhan had appealed from a non-adverse final judgment; “[njeither party contended] that the district court erred in entering final judgment for the defendant — the plaintiff specifically requested it and the defendant (understandably) [was] not complaining.” Druhan, 166 F.3d at 1326. As I have explained earlier, adverse parties are indispensable to the creation of the “case or controversy” required by Article III of the Constitution to enable an appeal to go forward. Id. Since adverse parties were not present, there was no “case or controversy” to review, and the appeal was accordingly dismissed. Id. Like Druhan, *1373 Woodard attempted to appeal a “judgment [that was] not appealable ... because it was obtained at the request of the plaintiff and there [was] therefore no ‘case or controversy’ in regard to it.” Woodard, 170 F.3d at 1044.
Druhan asked us to ignore the fact that she had asked for the dismissal, and that American Mutual had not objected to it, and to look “beyond the form of the appeal to the substance thereof,” to find that the parties, although not adverse to the dismissal, were adverse as to the district court’s decision not to remand the case to the state court. Druhan, 166 F.3d at 1326. We agreed that “in substance, [Druhan’s appeal was] not an appeal from a final judgment, but an appeal from an interlocutory order denying [her] motion to remand.” Id. Druhan had “requested [the dismissal] only as a means of establishing finality in the case such that [she] could immediately appeal the interlocutory order — an order that [she] believe[d] effectively disposed of her case.” Id. We then explained as follows:
The problem with [Druhan’s] approach is that it is not statutorily authorized. Congress has clearly stated the circumstances under which this court may hear an appeal from an interlocutory order. See 28 U.S.C. § 1292 (1994).... The district court’s order denying remand is not among the orders from which an appeal lies as a matter of right, and the plaintiff did not seek an appeal by certification [pursuant to 28 U.S.C. § 1292(b)]. The plaintiff instead attempts to appeal the interlocutory order by obtaining a dismissal with prejudice [and appealing the final judgment pursuant to 28 U.S.C. § 1291]. There may (or may not) be good policy reasons for allowing an appeal to proceed in this manner. That, however, is a decision that rests in the hands of Congress, which, along with the Constitution, sets the boundaries of this court’s jurisdiction. See Swint v. Chambers County Comm’n, 514 U.S. 35, 45-48, 115 S.Ct. 1203, 1209-11, 131 L.Ed.2d 60 (1995). This appeal lies beyond those boundaries.
Id. at 1326-27 (citations omitted)(footnotes omitted). Thus, in looking “beyond the form of the appeal to the substance thereof,” what we saw in Druhan was an appeal of an interlocutory order which we lacked statutory authority to hear. Id. at 1326.
B.
Fitel contends that the Druhan/Woodard jurisdictional holdings cannot be squared with United States v. Procter & Gamble Co., 356 U.S. 677, 78 S.Ct. 983, 2 L.Ed.2d 1077 (1958), and Greenhouse v. Greco, 544 F.2d 1302 (5th Cir.1977), a former Fifth Circuit decision.[9] According to Fitel, these cases stand for two propositions: if a plaintiff suffers an adverse, and dispositive, interlocutory ruling and then dismisses its case with prejudice and appeals, (1) the appeal presents an Article III case or controversy and (2) this court would have jurisdiction to hear the appeal under section 1291, despite the appeal being based on an interlocutory, rather than a final, order. I disagree with Fitel’s reasoning.
*1374 1.
In United States v. Procter & Gamble Company, 356 U.S. 677, 678, 78 S.Ct. 983, 984, 2 L.Ed.2d 1077 (1958), the United States, in effect,[10] voluntarily dismissed its civil antitrust action against Procter & Gamble in response to an unfavorable interlocutory order and then directly appealed the district court’s decision to the Supreme Court under 15 U.S.C. § 29.[11] Procter & Gamble, 356 U.S. at 679-80, 78 S.Ct. at 985. The Supreme Court held that it had jurisdiction to hear the appeal. It explained:
Appellees urge that this appeal may not be maintained because dismissal of the complaint was solicited by the Government. They invoke the familiar rule that a plaintiff who has voluntarily dismissed his complaint may not sue out a writ of error. See Evans v. Phillips, [17 U.S. 73, 4 L.Ed. 516 (1819)]; United States v. Babbitt, 104 U.S. 767, 17 Ct.Cl. 431, 26 L.Ed. 921 [(1881)]. The rule has no application here. The Government at all times opposed the production orders. It might of course have tested their validity in other ways, for example, by the route of civil contempt. Yet it is understandable why a more conventional way of getting review of the adverse ruling might be sought and any unseemly conflict with the District Court avoided. When the Government proposed dismissal for failure to obey, it had lost on the merits and was only seeking an expeditious review. This case is therefore like Thomsen v. Cayser, 243 U.S. 66, 37 S.Ct. 353, 61 L.Ed. 597 [(1917)], where the losing party got the lower court to dismiss the complaint rather than remand for a new trial, so that it could get review in this Court. The court, in denying the motion to dismiss, said “The plaintiffs did not consent to a judgment against them, but only that, if there was to be such a judgment, it should be final in form instead of interlocutory, so that they might come to this court without further delay.”
Id. at 680-81, 78 S.Ct. at 985-86 (quoting Thomsen, 243 U.S. at 83, 37 S.Ct. at 358).
The Court’s holding was in response to Procter & Gamble’s argument that the Government had sought, i.e., consented to, the judgment and therefore waived its right to challenge the interlocutory orders on appeal. Procter & Gamble, 356 U.S. at 680, 78 S.Ct. at 985;[12] see also Shores v. *1375 Sklar, 885 F.2d 760, 764 n. 7 (11th Cir.1989) (en banc) (explaining that the “eon-sent-to-judgment doctrine does not implicate the subject matter jurisdiction of the court” but rather that it rests on waiver of error). The Court was simply stating that the Government had not waived its objection to the district court’s interlocutory order by requesting a final judgment — this is why the Court noted that the “government at all times opposed the production” and cited to Thomsen, where it rejected the same “consent judgment” argument advanced by Procter & Gamble. Procter & Gamble, 356 U.S. at 680-81, 78 S.Ct. at 985-86; see Thomsen, 243 U.S. at 82, 37 S.Ct. at 357 (describing the argument in support of appellee’s motion to dismiss the appeal as: “[t]he judgment of the circuit court was entered in the form finally adopted at the request of the plaintiffs and by their consent, and the errors assigned by plaintiffs were waived by such request and consent”).
Procter & Gamble, then, deals only with whether the plaintiff waived its objection to the interlocutory order by requesting a dismissal — it never directly addresses the case or controversy issue we considered in Druhan. Nor does the fact that the Court heard the Government’s appeal in Procter & Gamble implicitly foreclose our Article III holding in Druhan. Procter & Gamble never argued that the Government lacked the requisite adversity to the final order, and “when questions of jurisdiction have been passed on in prior decisions sub si-lentio, [the] Court has never considered itself bound when a subsequent case finally brings the jurisdictional issue before [the Court].” Hagans v. Lavine, 415 U.S. 528, 533 n. 5, 94 S.Ct. 1372, 1377 n. 5, 39 L.Ed.2d 577 (1974).
Procter & Gamble also does not address our Druhan holding that Congress has not authorized the approach Druhan used— obtaining the dismissal of the case for the purpose of appealing a case dispositive interlocutory order. At the time of the Government’s appeal, the statutory law did not provide the Supreme Court with jurisdiction to hear an interlocutory appeal of the order the Government wanted to challenge; under section 15 of title 28 of the U.S. Code, all that the Government could bring to the Supreme Court was a final judgment. Thus, the Government’s only options for obtaining Supreme Court review of the district court’s interlocutory order were to either request that the district court dismiss its case and appeal the dismissal, or suffer the dismissal of its case as a contempt sanction and appeal the sanction, an option the Court described as “unseemly.” Procter & Gamble, 356 U.S. at 681, 78 S.Ct. at 986. Fitel, by contrast, had the option of requesting the district court to certify the interlocutory order at issue for appeal under § 1292(b).[13]
*1376 2.
_ , Like Procter & Gamble, Greenhouse does not explicitly address the question before us, whether Fitel’s appeal presents an Article III case or controversy. Fitel contends that Greenhouse addresses the question implicitly and answers it in the aff¡,.,,,atíVP
Greenhouse involved a class action seeking to “end[ ] alleged segregation and oth *1377 er racially discriminatory practices in the parochial schools in the Roman Catholic diocese of Alexandria, Louisiana.” Greenhouse, 544 F.2d at 1303. The defendants included the parish church, which held title to a “substantially all-white parochial school” in Marksville, Louisiana, the bishop of the diocese, and several federal agencies. Id. In two interlocutory orders, the district court limited the plaintiff class to residents of Marksville and dismissed the claims against the bishop, but the orders were not reduced to judgment. Id. After the court made these rulings, the Marks-ville parish schools were desegregated. At this point, the plaintiffs asked the court to dismiss the case as moot, and, as the defendants had no objection, the court dismissed it as moot. Id. at 1303-04. The plaintiffs then appealed the dismissal for the purpose of obtaining appellate review of the two interlocutory orders the court had entered, which had limited the class and dismissed the claims against the bishop. Id. at 1304. The defendants promptly moved the court of appeals to dismiss the appeal on the ground that the district court’s dismissal of the case as moot constituted a consent judgment and, as such, was not appealable. Id.
The court of appeals agreed that the claims against the Marksville parish church were moot, but held that the district court’s order dismissing the case had not terminated the litigation. Id. Rather, the litigation was still ongoing because the district court had not reduced to final judgment its interlocutory order dismissing the plaintiffs’ claims against the bishop; moreover, the plaintiffs’ claims against the federal agencies were still pending. Id. In the panel’s words, the ease against the federal agencies “w[as] dormant but for want of a final order, not for mootness.” Id. The court therefore vacated the district court’s order dismissing the case as moot for want of an appealable final judgment under section 1291.[14] Id.
It is obvious that, in arriving at this disposition, the court was not required to answer the question of whether the plaintiffs could have maintained an appeal and obtained review of the two interlocutory orders, had they, like Fitel, first obtained the dismissal of all of their claims with prejudice. According to Fitel, the court nonetheless answered this question, presumably as an alternative holding. Fitel bases its argument on language appearing in the court’s opinion antecedent to the statement that the appeal was being dismissed for want of a judgment. The language Fitel cites relates to the fact that the district court dismissed the case as moot in response to a letter-motion the plaintiffs had sent to the court, see id. at 1303-04, and explores whether this precluded the plaintiffs from appealing the two interlocutory orders the court had previously entered. The court stated,
The doctrine that one may not appeal from a consent judgment does not apply to the situation before us. “By consenting to the judgment that is entered, a party waives his right to appeal from it. He may, however, urge on appeal that his consent was not actually given.” 9 Moore Federal Practice P 203.06. It is obvious that plaintiffs did not intend by their letter-motion to consent to a judgment that would preclude them from the appellate review the desire for which triggered their request that a judgment be entered. Nor could the trial court have entertained such an intent. It was aware that plaintiffs were seeking to *1378 review the two orders that had narrowed the case. It would be inconsistent with the court’s obligation under F[ed]. R. Civ. P. 23 for the court to terminate the case by a non-appealable judgment that would dispose of the claims for diocesan-wide relief, raised by non-Marksville plaintiffs and on behalf of a diocesan-wide class.
Id. at 1305. Drawing on part of this language, Fitel’s brief in opposition to EBG’s motion to dismiss the appeal asserts that
Even where an appellant has affirmatively requested dismissal (which is not the case here), binding authority of this Circuit has held that dismissal of the appeal is improper where “[i]t is obvious that plaintiffs did not intend by their letter-motion to consent to a judgment that would preclude them from the appellate review the desire for which triggered their request that a judgment be entered.” Greenhouse v. Greco, 544 F.2d 1302, 1305 (11th [5th] Cir.1974); see also Dorse v. Armstrong World Indus., Inc., 798 F.2d 1372 (11th Cir.1986) (refusing to dismiss appeal despite fact that appellant had entered into a stipulation of judgment).[15] Similarly, it was obvious to the [district c]ourt and counsel for EBG that [Fitel] clearly and consistently objected to the district court’s preclusion of expert testimony and that [Fitel] never consented, or intended to consent to a judgment that would preclude [Fitel] from appellate review.
The Greenhouse language the brief quotes provides Fitel no support for two reasons. First, the language is pure dicta; it deals with a hypothetical scenario. It assumes that the district court had entered a judgment that was final as to all issues and parties and thus appealable under section 1291; that the plaintiffs had appealed the judgment; that the defendants had moved to dismiss the appeal on the ground that the plaintiffs had “consented” to the judgment;[16] that the plaintiffs had responded to the motion by stating that their “consent was not actually given”; and that it was obvious that the trial court, in discharging its responsibilities under Rule 23, could not have entertained the notion that the plaintiffs were consenting to the dismissal of their case. The dicta ends with this implication: if faced with this scenario, the panel would have found that the plaintiffs had not consented to the dismissal.
Second, Greenhouse has no bearing on our “case or controversy” holdings in Dru-han and Woodard. Since the Greenhouse panel was not presented with a final judgment it was not necessary for the panel to reach the issue of standing, and thus it did not do so explicitly. If it reached the issue, it did so sub silentio. In this circuit, a panel’s sub silentio jurisdictional finding in one case does not constitute binding precedent, as “it is well-established circuit law that we are not bound by a prior decision’s sub silentio treatment of a jurisdictional question.” Main Drug, Inc. v. Aetna U.S. Healthcare, Inc., 475 F.3d 1228, 1231 (11th Cir.2007) (quotation omitted).
Accordingly, I believe that our precedent in Druhan and Woodard effectively ends the day for Fitel’s appeal. Fitel should not be permitted to receive immediate, automatic appellate review by seeking a dismissal with prejudice. Instead, Fitel *1379 should have used the statutory mechanism in place, section 1292(b), if it wanted to receive appellate review. It is to this point that I now turn.
III.
When all is said and done, it is obvious that an interlocutory order that effectively forecloses the plaintiffs case is appealable under section 1292(b). Section 1292(b) provides for the appeal of an interlocutory order if the district court certifies that it “may materially advance the ultimate termination of the litigation.” 28 U.S.C. § 1292(b). An interlocutory order that effectively terminates the plaintiffs case— like the order Fitel is attempting to appeal — obviously meets this definition. Congress, in enacting section 1292(b) in 1958, could have authorized the appeal of such an order without the district court’s certification (and the court of appeals’s acceptance of the appeal), provided that the appellant demonstrated to the court of appeals that the order effectively, and adversely, disposed of its case, but Congress chose not to go that route.
Instead, Congress required that the district judge determine the dispositive effect of the order it has entered. This makes perfect sense. The district judge is in the best position to assess the situation at hand — in particular, the efficiency and cost effectiveness of authorizing the interlocutory appeal to go forward.[17] In certifying *1380 the order, and carefully circumscribing and plainly stating the issue, the judge is telling the court of appeals that entertaining the appeal will enhance efficiency and cost-effectiveness in reaching a final judgment in the case.[18] The court of appeals, as a total stranger to the case, is ill-suited to undertake this task in the first instance. Adopting a policy of entertaining interlocutory appeals that could be certified under section 1292(b), but are not, may encourage some lawyers to dismiss a claim that might succeed notwithstanding the adverse interlocutory ruling. By traveling the section 1292(b) route rather than the route Fitel has taken, a lawyer can avoid the risk of dismissing such a claim, and thereby encountering a malpractice suit.[19] If unsuccessful on appeal, counsel will have the opportunity to revisit the client’s case before deciding whether to call it a day. If it appears that, in light of the unsuccessful appeal, the case lacks merit, counsel simply informs the court — perhaps on summary judgment, a Rule 12(b)(6) determination setting, or under Rule 41(a) or (b)— that the plaintiff cannot establish its claim.
The majority objects to this approach by noting that section 1292(b) certification was by no means “guaranteed” (“there is no basis for the dissent’s bold prediction that a section 1292(b) request likely would have been granted”) and that Fitel could have been denied appellate review if the district judge failed to certify the order. Indeed, that is possible. However, a denial of certification would suggest that the *1381 district judge, who is in the best position to see the entire landscape of the unfolding case, did not believe either that his order involved a “controlling question of law as to which there is substantial ground for difference of opinion” or that appellate review would “materially advance the ultimate termination of the litigation.” In either case, the decision of whether immediate appellate review is appropriate is best made by a district court judge, not the individual litigants.
Additionally, the majority rejects my reasoning by arguing that the section 1292(b) route “foists upon litigants and counsel an untenable position” where the “attorney dare not candidly tell the court that its ruling is case-dispositive.” I fail to see how requesting section 1292(b) certification of an interlocutory order places an attorney in a vexing ethical dilemma. Indeed, by requesting section 1292(b) certification, an attorney is candidly informing the court that the order at hand will “materially advance the ultimate termination of the litigation.” There is no ethical dilemma that an attorney faces if the attorney candidly informs the court about his client’s positions and diligently pursues his client’s goals through the statutory framework.
It is for these reasons that I respectfully DISSENT.

. 28 U.S.C. § 1291 provides that:
The courts of appeals (other than the United States Court of Appeals for the Federal Circuit) shall have jurisdiction of appeals from all final decisions of the district courts of the United States, the United States District Court for the District of the Canal Zone, the District Court of Guam, and the District Court of the Virgin Islands, except where a direct review may be had in the Supreme Court.

. See 28 U.S.C. § 1292(a)(1) C'[T]he courts of appeals shall have jurisdiction of appeals from ... Interlocutory orders of the district courts of the United States, the United States District Court for the District of the Canal Zone, the District Court of Guam, and the District Court of the Virgin Islands, or of the judges thereof, granting, continuing, modifying, refusing or dissolving injunctions, or refusing to dissolve or modify injunctions, except where a direct review may be had in the Supreme Court”).

. See 28 U.S.C. § 1292(a)(2) ("[T]he courts of appeals shall have jurisdiction of appeals from ... Interlocutory orders appointing receivers, or refusing orders to wind up receiv-erships or to take steps to accomplish the purposes thereof, such as directing sales or other disposals of property”).

. See 28 U.S.C. § 1292(a)(3) ("[T]he courts of appeals shall have jurisdiction of appeals from ... Interlocutory decrees of such district courts or the judges thereof determining the rights and liabilities of the parties to admiralty cases in which appeals from final decrees are allowed”).

. The full text of 28 U.S.C. § 1292(b) is as follows:

. In its briefs, Fitel objects to this characterization of the lower court proceedings. Fitel instead suggests that it merely presented the district court with the information that its sanction was case dispositive. However, the record strongly suggests that Fitel sought a dismissal with prejudice. The district court’s January 7, 2007 order dismissing the case confirms this fact. Referring to the fact that, at the December 15 hearing, "counsel for the Plaintiffs ... suggested that, in lieu of proceeding with the remaining pending discovery motions, the Court simply proceed to dismiss the case,” the January 7 order stated: "based on [Plaintiff's] stipulation that the Court’s ruling [excluding the expert witness] is 'case dispositive,' the Court dismissed the case.”
If Fitel disputed the district court’s characterization of the proceedings, the proper avenue to raise an objection is through Rule 59(e) of the Federal Rules of Civil Procedure. Rule 59(e) provides parties with the option of petitioning the court to alter or amend a judgment. Because Fitel did not pursue this route, we must assume that Fitel did not dispute the district court’s characterization of the motion to dismiss with prejudice.

. Both Druhan and Woodard were appeals brought under section 1291. See Druhan, 166 F.3d at 1325; Woodard, 170 F.3d at 1044.

. In Druhan, Virginia Druhan brought suit against American Mutual Life Insurance Company (''Mutual”) in Alabama state court, alleging that Mutual had fraudulently induced her to purchase a life insurance policy. Druhan, 166 F.3d at 1324. Mutual removed the case to federal court, on the basis that since Druhan's policy was "purchased in connection with a benefits package provided by her employer,” her suit was preempted by the Employee Retirement Income Security Act ("ERISA”), 29 U.S.C. §§ 1001-1461. Id. at 1324-25. Druhan, "contending that her claims were not preempted by ERISA, moved the district court to remand the case to state court.” Id. at 1325. The district court denied the motion. Id.
Druhan then moved the district court to dismiss her complaint with prejudice. In her moving papers, she stated that she had no claims under ERISA and thus the court’s order denying her motion to remand effectively left her without a remedy. The court granted her request, and subsequently entered a final judgment dismissing Dru-han’s claims with prejudice.
Id. (footnote omitted). Druhan immediately appealed the judgment to obtain review of the district court’s interlocutory order denying her motion to remand. Id.
In Woodard, Woodard brought a class action against STP Corporation and First Brands Corporation in Alabama state court, and the state court granted a conditional class certification. 170 F.3d at 1044. The defendants removed the case to federal court, and Woodard moved the court to remand the case to the state court. Id. The district court denied the motion and vacated the state court’s conditional class certification. Id. Woodard then moved the district court for a voluntary dismissal without prejudice. Id. The defendants objected to the court dismissing the case without prejudice because they had incurred considerable expenses in litigating the case and did not want to face another suit in state court. Id. The court granted Woodard’s motion, but dismissed the case with prejudice. Id. Woodard appealed the dismissal, intending to obtain appellate review of the district court's interlocutory order denying his motion to remand the case. Id.

. In Bonner v. Prichard, 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), we adopted as binding precedent in the Eleventh Circuit all decisions of the former Fifth Circuit announced prior to October 1, 1981. Greenhouse was decided prior to that date and therefore prior to Druhan and Woodard. Hence, we disregard Druhan and Woodard's holdings to the extent that they contradict Greenhouse’s, as our decision in Cohen v. Office Depot, Inc., 204 F.3d 1069, 1072 (11th Cir.2000), dictates that "[w]here ... prior panel decisions conflict we are bound to follow the oldest one.”

. In Procter & Gamble, the Government sued Procter & Gamble after a federal grand jury refused to indict the company for violating the criminal antitrust laws. Procter & Gamble, 356 U.S. at 678, 78 S.Ct. at 984. During discovery in the civil action, Procter & Gamble requested that the Government disclose the transcripts of the grand jury proceedings. Id. The Government resisted the request, the district court ordered it to disclose the transcripts, and the Government, "adamant in its refusal to obey, filed a motion in the District Court requesting that those orders be amended to provide that, if production were not made, the court would dismiss the complaint.” Id. at 678-79, 78 S.Ct. at 984-85. The district court entered the order, amended as the Government requested, and dismissed the case. Id. at 680, 78 S.Ct. at 985.

. The version of 15 U.S.C. § 29 then in effect stated
In every civil action brought in any district court of the United States under any of said Acts [antitrust acts], wherein the United States is complainant, an appeal from the final judgment of the district court will lie only to the Supreme Court.
15 U.S.C. § 29 (1948).

. The Procter & Gamble Court cited Evans v. Phillips, 4 Wheat. 73, 17 U.S. 73, 4 L.Ed. 516 (1818), and United States v. Babbitt, 104 U.S. 767, 768, 26 L.Ed. 921 (1881), as supporting the argument put forward by Procter & Gamble. 356 U.S. at 680, 78 S.Ct. at 985. Evans states only that "[a] writ of error will not lie on a judgment of nonsuit.” 17 U.S. at 73. Babbitt, though, has a more detailed holding, in which the Court explained
*1375 In Pacific Railroad v. Ketchum (101 U.S. 289, 25 L.Ed. 932), we decided that when a decree was rendered by consent, no errors would be considered here on an appeal which were in law waived by such a consent. In our opinion, this case comes within that rule. The consent to the judgment below was in law a waiver of the error now complained of. For this reason the judgment below must be affirmed.
Babbitt, 104 U.S. at 768.

. In addition to its argument based on Procter & Gamble, Fitel, citing Judge Barkett's concurrence in Druhan, suggests that Dru-han's, holdings do not apply when the interlocutory order at issue has the effect of dismissing the plaintiff’s case and contends that the district court's order striking its expert witness effectively dismissed its legal malpractice claim. See Graves v. Jones, 184 Ga.App. 128, 361 S.E.2d 19, 20 (1987) ("[Ejxcept in clear and palpable cases (such as the expiration of a statute of limitation), expert testimony is necessary to establish the parameters of acceptable professional conduct, a significant deviation from which would constitute malpractice.”). The concurrence stated
*1376 I am not prepared at this time to agree with the [majority’s discussion] in footnote 7 rejecting outright our sister circuits’ views permitting appellate review of a “voluntary dismissal where such a dismissal was granted only to expedite review of an order which had in effect dismissed appellant's complaint.’’ Studstill v. Borg Warner Leasing, 806 F.2d 1005, 1008 (11th Cir.1986) (collecting cases). It is unnecessary to confront this issue directly, as the cases permitting such review do so only if it is clear that the appellant has "lost on the merits” and " ‘only seeks’ an 'expeditious review.’ ” Laczay v. Ross Adhesives, 855 F.2d 351, 355 (6th Cir.1988) (quoting United States v. Procter & Gamble Co., 356 U.S. 677, 78 S.Ct. 983, 2 L.Ed.2d 1077 (1958)). The district court’s denial of Druhan's motion to remand, however, did not have the effect of dismissing her action. Druhan still had the ability to make her claim under ERISA.
Druhan, 166 F.3d at 1327.
The concurrence quoted our decision in Studstill, which had quoted, in dicta, the Sixth Circuit's holding in Raceway Properties v. Emprise Corp., 613 F.2d 656 (6th Cir.1980). See Druhan, 166 F.3d at 1327 n. 7 (distinguishing Studstill from cases in which the plaintiff voluntarily dismisses his complaint in response to an unfavorable interlocutory order). Raceway relied on the Supreme Court’s decision in Procter & Gamble. Raceway, 613 F.2d at 657. The concurrence also quoted the Sixth Circuit’s decision in Laczay v. Ross Adhesives, 855 F.2d 351, 355 (6th Cir.1988), which relied on both Raceway and Procter & Gamble.
The concurrence, in relying on Raceway and, by extension, Procter & Gamble, at least implicitly argued that these cases stood for the proposition that if the interlocutory order effectively dismissed the plaintiff's cause of action, there would be a case or controversy under Article III and we could hear the plaintiff’s appeal pursuant to 28 U.S.C. § 1291. Procter & Gamble does not stand for this proposition, see supra Part II.B.1., and neither does Raceway.
In Raceway, the plaintiff voluntarily dismissed his case with prejudice after the district court denied his motion for summary judgment and, in so doing, resolved an issue of law against the plaintiff. Raceway, 613 F.2d at 657. The appellee in Raceway, as in Procter & Gamble, challenged the court's jurisdiction to hear the appeal, relying on the well-established rule that parties to a consent judgment waive the right to appeal that judgment. Id. (citing Scholl v. Felmont Oil Co., 327 F.2d 697, 700 (6th Cir.1964) (holding that consent to a judgment waives the appellant’s objections to that judgment, in support of the appellee’s argument)). The Sixth Circuit interpreted Procter & Gamble to create an exception to that rule, holding that "the judgment below is appealable [as a final order under 28 U.S.C. § 1291] since appellant’s solicitation of the formal dismissal was designed only to expedite review of an order which had in effect dismissed appellant’s complaint.” Id. Similarly, in Laczay v. Ross Adhesives, 855 F.2d 351 (6th Cir.1988), the Sixth Circuit again held that Procter & Gamble created an exception to the rule that parties to a consent judgment waive any objections. Laczay, 855 F.2d at 355 ("The basic requirement for ap-pealability of a consent judgment is that the one proposing or soliciting it shall have 'lost on the merits and [be] only seeking an expeditious review.' ") (quoting Procter & Gamble, 356 U.S. at 681, 78 S.Ct. at 985).
Judge Barkett's concurrence, then, rests on inapposite cases — cases that deal only with waiver — and provides no support for Fitel’s suggestion that the allegedly case-dispositive nature of the district court's order striking its expert provides us with Article III jurisdiction to hear its appeal. Moreover, the logic of Dmhan s majority opinion forecloses Fitel’s argument. I fail to see how the fact that an interlocutory order effectively disposed of a claim could make a difference under the rationale set forth in Druhan. In this case, the court is still faced with, in the form of the appeal, a final order dismissing Fitel's case, which was requested by Fitel, and in substance, an appeal from an interlocutory order which we lack statutory jurisdiction to hear.

. In doing so, the court instructed the district court to either enter a final judgment as to all parties or a partial final judgment pursuant to Federal Rule of Civil Procedure 54(b). Greenhouse, 544 F.2d at 1305.

. We distinguished Dorse v. Armstrong World Indus., Inc., 798 F.2d 1372 (11th Cir.1986), in Druhan. Druhan, 166 F.3d at 1325 n. 4.

. The Greenhouse panel acknowledged the doctrine that one "may not appeal from a consent judgment. ‘By consenting to the judgment that is entered, a party waives his right to appeal from it.’ ” Greenhouse, 544 F.2d at 1305 (emphasis added).

. The role of the district court in screening interlocutory appeals is emphasized in the legislative history of section 1292(b). We recounted this history in McFarlin v. Conseco Services., 381 F.3d 1251, 1257 (11th Cir.2004), stating
The addition of [section] 1292(b) was prompted by a proposal to Congress from the Judicial Conference of the United States Courts. The specifics of that proposal originated from a committee of judges appointed by the Chief Justice to study the matter of interlocutory appeals. The committee’s report was approved by the Judicial Conference and transmitted to Congress, where it was reproduced in the reports of the House and Senate Judiciary Committees when they acted favorably on the legislation. The report of the Judicial Conference committee is particularly persuasive in regard to the intent behind the provision, because Congress enacted the report's proposed language verbatim.
Id. (citations omitted).
The report from the Judicial Conference committee was attached to the report issued by the Senate Committee on the Judiciary and states
The right of appeal given by the amendato-ry statute is limited both by the requirement of the certificate of the trial judge, who is familiar with the litigation and will not be disposed to countenance dilatory tactics, and by the resting of final discretion in the matter in the court of appeals, which will not permit its docket to be crowded with piecemeal or minor litigation.
S. Rep. No. 85-2434 (1958), reprinted in 1958 U.S.C.C.A.N. 5255. The Senate Report itself states
[W]hile it may be desirable to permit appeals from any interlocutory order in certain instances, the indiscriminate use of such authority may result in delay rather than expedition of cases in the district courts. Obviously, such appeals should not be allowed if they are filed solely for the purpose of delay or are based on spurious grounds. In order to eliminate such appeals the bill is cast in such a way that the appeal is discretionary rather than a matter of right. It is discretionary in the first instance with the district judge ....
Id. at 5256-5257. The Senate Report also included a report from a committee appointed by the Chief Judge of the Tenth Circuit, which addressed the procedure by which interlocutory appeals should be taken. Id. at 5258. The committee recommended an interlocutory appeals procedure similar to that eventually adopted by Congress in § 1292(b). The Senate Committee apparently thought the Tenth Circuit committee’s report to be instructive and therefore included it in its report. The Tenth Circuit committee’s report states
[it is necessary] to provide a procedural screen through which only the desired *1380 cases may pass .... We believe that the certificate of the trial judge is essential both to recognition of the appropriate case [for hearing an interlocutory appeal] and to rejection of applications calculated merely to delay the judgment. Only the trial court can be fully informed of the nature of the case and the peculiarities which make it appropriate to interlocutory review at the time desirability of the appeal must be determined; and he is probably the only person able to forecast the further course of the litigation with any degree of accuracy. Immediate availability of counsel for informal conference should prove a great advantage to the trial judge in isolating the extraordinary case in which valuable savings could be expected to follow an immediate review. Requirement that the trial court certify the case as appropriate for appeal serves the double purpose of providing the appellate court with the best informed opinion that immediate review is of value, and at once protects appellate dockets against a flood of petitions in inappropriate cases.
Id. at 5262.

. This case provides an excellent example of how following the procedure established by section 1292(b) enhances judicial efficiency and thus reduces transaction costs. In evaluating whether to authorize a section 1292(b) appeal, the district court must consider if "an immediate appeal from the order may materially advance the ultimate termination of the litigation.” 28 U.S.C. § 1292(b). Consequently, had Fitel requested a section 1292(b) certification of the order striking its expert, it is a safe assumption that the district court would have finished the hearing that it was already conducting and would have considered EBG's remaining motions for sanctions, since EBG's fifth motion, which sought the dismissal of Fitel’s entire complaint with prejudice, might have terminated the litigation, thus obviating any need for an interlocutory appeal. Had the court heard the remaining motions and, as seems likely given the tenor of the December 15, 2006 hearing, dismissed Fitel's complaint, Fitel would have appealed, and it may have turned out that a ruling on the interlocutory order Fitel now presents would have been unnecessary. As the case stands now, the district court, again given the tenor of the December 15 hearing, may dismiss Fitel’s complaint after hearing EBG’s remaining motions, in which event, this case will come before us once again.

. Where a court of appeals has reviewed an interlocutory order in an appeal taken from a judgment of dismissal entered solely at the plaintiff's request, one must ask whether the court of appeals, in sidestepping section 1292(b)'s limitation, took the appeal because plaintiff's counsel may have committed malpractice in failing to seek a section 1292(b) certification.